# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| **IN RE:  WAL-MART WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION** | **No. 11-17718** |
| ———————————— | **MDL 1735** |
| Carolyn Beasley Burton;  Robert W. Mills; The Mills Law Firm, | D.C. No. 2:06-CV-00225-PMP-PAL |
|           Appellants, | District of Nevada, Las Vegas |
| v. | |
| Class Counsel and Party to Arbitration; Arbitrator, | |
|           Appellees. | |
| ———————————— | |
| **IN RE: WAL-MART WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION** | **No. 11-17778** |
| Carol P. LaPlant, | **MDL 1735** |
|           Appellant, | D.C. No. 2:06-CV-00225-PMP-PAL |
| v. | District of Nevada, Las Vegas |
| Class Counsel and Party to Arbitration; Arbitrator, | |
|           Appellees. | |

## APPELLANT THE MILLS LAW FIRM'S REPLY BRIEF

Robert W. Mills, The Mills Law Firm
880 Las Gallinas Ave., Suite 2
San Rafael, CA 94903
Tel: (415) 455-1326
rwm@millslawfirm.com

# TABLE OF CONTENTS

I.   INTRODUCTION .........................................................................1

     ARGUMENT ..............................................................................9

II.  STANDARD OF REVIEW ............................................................9

III. MILLS DID NOT WAIVE ITS RIGHT TO APPEAL ............................10

   A.  Mills Did Not Waive its Rights by Executing the Settlement Agreement
       .........................................................................................10

   B.  Appellees Cannot Meet Their Burden of Demonstrating an "Implied
       Waiver" by Clear and Convincing Evidence ............................13

      1.  Mills Did Not Waive its Rights by Moving for Preliminary or Final
          Approval of the Settlement ..............................................14

      2.  Mills Did Not Waive its Rights by Participating in a Voluntary,
          Consensual Mediation .....................................................17

      3.  Mills Did Not Waive Its Rights by Participating in the Fee Arbitration
          ....................................................................................19

IV.  THE DISTRICT COURT ERRED BY NOT VACATING PHILLIPS'
     ARBITRATION AWARD PURSUANT TO 9 U.S.C. § 10(a) .................20

   A.  Vacatur Was Required by Phillips' "Evident Partiality" .............20

      1.  Phillips Failed to Disclose or Seek Authorization Before Accepting
          Multiple Roles in the *Salvas* Case at the Request of the Appellees and
          Wal-Mart .......................................................................22

          a) Phillips' Undisclosed Mediation Role in Salvas ...........22

          b) Phillips' Undisclosed Roles in the Term Sheet Created a Financial
          Incentive for Phillips to Seek Approval of the Settlement.................27

i

   c) Phillips' Unauthorized and Undisclosed Advocacy Role in Support of the Proposed *Salvas* Settlement .....................................................28

  2. Phillips Failed to Disclose that Appellee Bonsignore Retained Him in Two S*mokeless Tobacco* Cases..........................................................32

  3. Phillips Failed to Disclose How He Earned Two $5,000 Checks from Appellee Bonsignore ...........................................................................34

 B. Vacatur Was Required by Phillips' "Actual Bias," "Misconduct" and "Undue Means" ............................................................................................35

  1. Phillips Refused to Cancel the *Salvas* Mediation Scheduled by Appellees and Wal-Mart ....................................................................37

  2. Phillips Made Misleading Claims About the May 16, 2009 *Salvas* Mediation, Supporting Appellees' Effort to Win that Settlement's Approval ...................................................................................................39

  3. Phillips Repeatedly Received Inappropriate and *Ex Parte* Communications from Appellees.......................................................41

  4. Phillips Inappropriately Obtained and Responded to Mills' Sealed Motions in the District Court, Exhibiting "Misconduct" and "Actual Bias" ...........................................................................................46

 C. Phillips "Exceeded His Powers" by Presiding Over Multiple *Ultra Vires* Arbitrations, Demonstrating "Actual Bias" and "Misconduct" ...............48

**V. PHILLIPS' BIAS AND ANIMOSITY CULMINATED IN A FEE AWARD THAT WAS "IRRATIONAL" AND EVIDENCED A "MANIFEST DISREGARD OF LAW" ....................................................53**

**VI. THE APPEAL OF CAROLYN BEASLEY BURTON SHOULD BE DISMISSED................................................................................................54**

**VII. CONCLUSION AND SUMMARY OF RELIEF REQUESTED** .............55

**CERTIFICATE OF COMPLIANCE** ...................................................56

**CERTIFICATE OF SERVICE** ..........................................................57

# TABLE OF AUTHORITIES

## Cases

*A.G. Edwards & Sons, Inc. v. McCollough*,

   967 F.2d 1401 (9th Cir. 1992) ....................................................... 36, 41

*Aerojet–General Corp. v. American Arbitration Ass'n*,

   478 F.2d 248 (9th Cir. 1973) ..............................................................12

*Collins v. D.R. Horton, Inc.*,

   505 F.3d 874 (9th Cir.2007) ................................................................9

*Comedy Club, Inc. v. Improv West Associates*,

   553 F.3d 1277 (9th Cir. 2009) ............................................................20

*Commonwealth Coatings Corp. v. Continental Casualty Co.*,

   393 U.S. 145 (1968) ..................................................................... passim

*Coutee v. Barington Capital Group, L.P.*,

   336 F.3d 1128 (9th Cir. 2003) ..................................................... 48, 53

*Dogherra v. Safeway Stores, Inc.*,

   679 F.2d 1293 (9th Cir. 1982) ............................................................47

*Fid. Fed. Bank, FSB v. Durga Ma Corp.*,

   386 F.3d 1306 (9th Cir. 2004) ..................................................... 21, 33

*Flores v. American Seafoods Co.*,

   335 F.3d 904 (9th Cir. 2003) ...............................................................11

*Groves v. Prickett*,

   420 F.2d 1119 (9th Cir. 1970) .............................................................13

*Hill v. Norfolk & W. Ry.*,

   814 F.2d 1192 (7th Cir. 1987) .............................................................11

*In re Hat*,

   363 B.R. 123 (Bankr. E.D. Cal. 2007) ......................................... 10, 13

*In Re: Massachusetts Smokeless Tobacco Litigation*,

   2008 WL 6523782 (Mass. Super., Feb. 5, 2008) ........................... 3, 33

*Jevne v. Superior Court*,

   35 Cal. 4th 935, 111 P.3d 954 (2005) ..................................................22

*Johnson v. Wells Fargo Home Mortg., Inc.*,

   635 F.3d 401 (9th Cir. 2011) ..............................................................54

*Lagstein v. Certain Underwriters at Lloyd's, London*,

   607 F.3d 634 (9th Cir. 2010) ....................................................... 22, 48

*M & A Elec. Power Co-op. v. Local Union No. 702, Int'l Broth. of Elec. Workers,*
*   AFL-CIO*,

   977 F.2d 1235 (8th Cir. 1992) .............................................................46

*MACTEC, Inc. v. Gorelick*,

    427 F.3d 821 (10th Cir. 2005) ........................................................ 11, 12

*Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*,

    44 F.3d 826 (9th Cir.1995) ...............................................................48

*Middlesex Mut. Ins. Co. v. Levine*,

    675 F.2d 1197 (11th Cir. 1982) .........................................................21

*Ovitz v. Schulman*,

    133 Cal. App. 4th 830, 35 Cal. Rptr. 3d 117 (2005) ...........................22

*Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*,

    935 F.2d 1019 (9th Cir. 1991) ...........................................................41

*Schmitz v. Zilveti*,

    20 F.3d 1043 (9th Cir. 1994) .............................................................33

*Simula, Inc. v. Autoliv, Inc.*,

    175 F.3d 716 (9th Cir. 1999) .............................................................50

*Southco, Inc. v. Reell Precision Mfg. Corp.*,

    331 Fed.Appx. 925 (3rd Cir. 2009) ...................................................12

*Tabas v. Tabas*,

    47 F.3d 1280 (3d Cir. 1995) .............................................................12

*Team Scandia, Inc. v. Greco*,

    6 F. Supp. 2d 795 (S.D. Ind. 1998) ...................................................11

*U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*,

591 F.3d 1167 (9th Cir. 2010) ......................................................... 9, 41

*United States v. Park Place Associates, Ltd.*,

563 F.3d 907 (9th Cir. 2009) ...............................................................9

*Volt Info. Scis. Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*,

489 U.S. 468 (1989) ...........................................................................18

*Woods v. Saturn Distribution Corp.*,

78 F.3d 424 (9th Cir.1996) ..................................................................21

## Statutes

9 U.S.C. § 10(a) ....................................................................................22

9 U.S.C. § 10(a)(1)................................................................................41

9 U.S.C. § 10(a)(2)................................................................... 21, 33, 34

9 U.S.C. § 10(a)(3)................................................................................48

9 U.S.C. § 10(a)(4)................................................................................48

California Code of Civil Procedure § 1281.85 ......................................22

Nevada Revised Statutes § 38.227........................................................36

## Rules

Federal Rules of Evidence, 801(d)(2)(A) ............................................39

## Other Authorities

California Ethics Standards for Neutral Arbitrators in Contractual Arbitration

Standard 7(f)..................................................................................................23

Standard 1(b)................................................................................................36

The Code of Ethics for Arbitrators in Commercial Disputes, Canon I(A)..............36

## I.    INTRODUCTION

Against a backdrop of undisclosed business relationships, unexplained payments, repeated *ex parte*, inappropriate and intemperate communications, improper advocacy, conflicts of interest, *ultra vires* proceedings, and wide-ranging ethical violations and misconduct, no reasonable litigant in Appellant's position could have expected to receive a fair and unbiased award from arbitrator Layn Phillips ("Phillips").   Indeed, despite performing the majority of the meaningful work that contributed to this case's success, Phillips awarded Appellant,[1] a Co-Lead Counsel in this case, only 21.6% of the $28,233,050 in attorneys' fees made available to class counsel--***nearly $9 million less than it petitioned for***--and half the fees awarded to the other Co-Lead, Appellee Bonsignore.  The District Court erred in failing to vacate this unjust award.

The evidence remains undisputed that on May 12, 2009, when all *MDL 1735* ("MDL") class counsel began executing the final Settlement Agreement, reaffirming (for the third time) Phillips' designation as fee arbitrator, Mills did not know or have reason to suspect any of the following:

(1) That Phillips would entertain a mediation of a different class action against Wal-Mart Stores Inc., (the "*Salvas*" case), at the behest of Appellees Furth

---

[1] Appellant refers to The Mills Law Firm, ("MLF" or "Mills"), and the attorneys it employed on its behalf.  This included, at various times, Co-Lead Counsel Carolyn Beasley Burton ("Burton"), who worked on *MDL 1735* before joining the Mills Law Firm as an employee associate.

and Bonsignore, without making any disclosures or seeking Mills' consent, despite knowing that Mills' employee (Burton) was the *de facto* lead counsel in the *Salvas* case and Co-Lead Counsel in this case, and despite also knowing that Furth and Bonsignore did not represent anyone in *Salvas*, had been fired by the class representatives, and had no settlement authority;[2]

(2) That Phillips would refuse to cancel the mediation, despite Mills' objections and the objections of its clients and co-counsel, and would make misleading claims about what transpired in his office on the day of the mediation;[3]

(3) That Phillips would support the collusive and inadequate settlement Appellees reached in his office that day, and would agree to speak to the *Salvas* judge *ex parte* in support of that settlement despite Mills' repeated objections;[4]

(4) That the proposed *Salvas* settlement contained new, undisclosed, and lucrative financial incentives for Phillips himself;[5]

(5) That Phillips would pressure Mills to acquiesce to the settlement, despite the inadequate recovery it provided for the class;[6]

---

[2] ER000872; ER000874; ER00878-9; ER000780, ¶17-18.
[3] ER00876; ER00878-9; ER00882; ER00887.
[4] ER00925-926; ER00889; ER00912-13; ER00938-939. See also District Court Dkt. No. 756, p. 55, wherein Bonsignore stated that ". . . Judge Phillips did offer to speak with [*Salvas*] Judge Murtagh on an *ex parte* basis. . ."
[5] ER00906-910, Sections Q and B.2.
[6] ER00928-930; ER00932; ER00912-13; ER01007, ER01009.

(6) That Phillips would admit becoming "uncomfortable" as a result of the his incompatible and conflicting roles in these two cases, but would nonetheless refuse Mills' requests that he step down;[7]

(7) That Phillips had multiple, undisclosed business relationships with the Appellees, and that he would enter into still more undisclosed business relationships with Appellees after his designation but prior to his jurisdiction as arbitrator ever ripening;[8]

(8) That after his designation, but before his jurisdiction ripened, Phillips would receive two undisclosed checks (***totaling $10,000***) from Appellee Bonsignore, including one *cashier's check payable to Phillips personally*, neither of which has ever been explained or accounted for by Phillips or Bonsignore;[9]

(9) That Phillips would, over Mills' objections, engage in *ex parte* and inappropriate communications with its adversaries, who admitted that their intention was to bias Phillips and conceded that this could impair his neutrality;[10]

(10) That Phillips would conduct *ultra vires* "arbitrations" at the request of Bonsignore and against Mills, outside the scope of his admittedly limited

---

[7] ER00887.
[8] ER00077 ¶14; ER000215, ¶1; ER00793-4, ¶50; ER01133-1184.  See *In Re: Massachusetts Smokeless Tobacco Litigation*, 2008 WL 6523782 (Mass. Super., Feb. 5, 2008).
[9] ER1186-1189.
[10] See e.g. ER1040-1064; ER1079-1081; ER01069; ER001067.

jurisdiction, and then authorize Bonsignore to share his baseless "orders" and adverse comments about Mills with the District Court;[11]

(11) That Phillips would improperly obtain two confidential motions Mills would file under seal in the District Court, including its sealed motion seeking Phillips' disqualification;[12]

(12) That Phillips would provide active assistance to Appellees by filing his own responses to these motions, taking adversarial positions against Mills in the District Court;[13]

(13) That Phillips would make disparaging comments in the press about Mills and its then-pending motion to vacate his arbitration award;[14] and

(14)  That Phillips would allow his bias and animosity to taint his entire arbitration award, awarding 75% of the aggregate fees to peripheral counsel, and punishing Mills with a *de facto* negative multiplier,[15] while awarding the local counsel, (including many whose cases were stayed throughout the litigation), a 1.5 multiplier as the "default rule."[16]  As described in-depth in Mills' Opening Brief, despite the fact that Mills performed the overwhelming majority of critical, core

---

[11] ER0790 ¶42-ER0792, ¶45; ER001083-ER01102; ER01092.
[12] ER0993; ER01191-4.
[13] ER1194; ER01088-1090; USSER 02773-5.
[14] ER01196-1197; ER00151-152.
[15] ER00021-57.  Phillips' award ratified the Appellees' "fee pact," wherein they **voted** to support a positive multiplier for Bonsignore and a negative multiplier for Appellant.  See Dist. Ct. Dkt. No. 768, ¶10, p. 7.
[16] ER00027.

work in this case, Phillips awarded **_nearly twice as much_** to its co-lead, Bonsignore, based on his "subjective" feelings, and citing Mills' challenges to the rejected settlement he brokered in *Salvas* in a section entitled "Ethical Issues."[17]

As detailed below, Appellees' Joint Answering Brief ("Answering Brief") fails to rebut any of these dispositive facts,[18] and is not faithful to the record below. Appellees misrepresent or ignore critical facts, and distort the chronology of events by suggesting that, since Mills sought preliminary and then final approval of this settlement, it must have *always wanted* Phillips to serve as fee arbitrator, and only had a change of heart when it was dissatisfied with the award. The true chronology of events in the record, however, demonstrates the exact opposite:

First, the parties designated Phillips as the fee arbitrator in the binding term sheet executed on **_December 14, 2008_**,[19] months before Mills moved for preliminary or final approval of the settlement, and months and years before any

---

[17] ER00051; Opening Brief, pp. 58-66. Phillips awarded Bonsignore **_80%_** of the over $6 million so-called "surplus," and only **_20%_** to Mills, (see ER00049), ignoring the dispositive facts and the comprehensive analysis by renowned expert, Kenneth R. Feinberg. ER00806-832.

[18] While complaining about alleged *ad hominem* attacks, Appellees refer to Robert Mills, the proprietor of Appellant Mills, as a "professional objector." There is absolutely no support for this claim--Mills has never filed a single objection to any class action settlement in 39 years of practice, save the one Phillips brokered in *Salvas.* Rather than responding to such name calling, or dispute the many false but irrelevant assertions, Mills' Reply focuses on the critical facts, corrects the chronology, and demonstrates the District Court's erred in denying vacatur.

[19] ER00852-858.

evidence of improper conduct came to light.[20]  This term sheet, executed by Mills,

Appellee Bonsignore "on behalf of all states," Wal-Mart, and by Phillips himself,

could only be modified ". . . by a written agreement signed by all persons who

have signed this Term Sheet."[21]

Second, in April of 2009, *all MDL class counsel* again ratified Phillips' role

as fee arbitrator, at Phillips' insistence, after Appellee Bonsignore questioned

Phillips' relationships with Mills' first chair employee, Ms. Burton.[22]

Third, on May 12, 2009, *all MDL class counsel* began executing the final

Settlement Agreement, which superseded all prior agreements, and confirmed

Phillips' designation as fee arbitrator yet again in Section 22.9.[23]  Like the term

sheet, the Settlement Agreement could only be modified with the written

agreement of all signatories (and the court).[24]   Thus, by May 12, 2009,[25] there can

---

[20] The District Court entered final approval on November 2, 2009 (Dist. Ct. Dkt. No. 491), but that order was appealed by professional objectors.  This Court granted summary affirmance on August 13, 2010 (Dist. Ct. Dkt. No. 693), and the mandate was issued on September 3, 2010 (Dist. Ct. Dkt. No. 700).

[21] ER0857, Sec. R. Accordingly, Appellees' claim that Phillips was designated "in the ensuing months" following the mediation (Answering Brief, p. 15) is false, as is Appellees' claim that "all of the identified 'misconduct' was known" before Phillips' designation (Answering Brief, pp. 43-44).

[22] Answering Brief, pp. 15-16; SER 1825.

[23] ER01304-1432.  Class Counsel began signing the agreement on May 12, 2009, (e.g. ER01394), although Mills signed the copy it filed on May 26, 2009.

[24] ER01356.

[25] While he was a few months off, Bonsignore previously claimed that ". . . all other MDL representative counsel, voted in favor of Judge Phillips serving as a

be no dispute that all MDL class counsel were locked in to Phillips' designation as their fee arbitrator *before Mills discovered any of the fourteen critical facts identified above*.

Also fatal to Appellees' waiver arguments is the undisputed evidence that Mills immediately and repeatedly sought to substitute a different, neutral arbitrator once the truth about Phillips' conflicts began to emerge. This included the extraordinary step of asking Phillips *to recuse himself just three weeks* after Mills learned of the planned *Salvas* mediation,[26] and a subsequent motion to disqualify Phillips in the District Court.[27] These efforts began over a year before Phillips' jurisdiction under Section 22.9 ripened, and a year and half before the fee arbitration commenced.[28]

Appellees' waiver claims are further eroded by the fact that Appellees, Wal-Mart, *and Phillips himself*[29] vehemently opposed all of Mills' efforts to replace

_____

binding, non-appealable arbitrator of attorney fees and expenses *in March 2009*." Dist Ct. Dkt. No. 463, p. 3, fn. 2 (emphasis added).

[26] ER1016-01033. Appellant sought and obtained an ethics opinion from noted professor, Geoffrey C. Hazard, Jr. See ER000942-9.

[27] Dist. Ct. Dkt. No.646-647.

[28] Phillips ordered the parties to submit their initial arbitration briefing on October 4, 2010. See SER 1575.

[29] Summarily rejecting Appellant's recusal request, without a hearing or formal briefing, Phillips' office accused Appellant of attempting to "manipulate the alternative dispute resolution process." ER001071-1073.

Phillips, threatening lawsuits and sanctions,[30] and claiming that Phillips was a "material term" of the settlement.[31]   Appellees' waiver arguments are further undermined by their prior filings in this case, in which they claimed that Mills was powerless to challenge Phillips' service before final approval,[32] or until after he rendered his fee award.[33]  Since the District Court agreed, Appellees are judicially estopped from taking a different position now.[34]

As feared, despite overwhelming evidence that the Mills team spearheaded this litigation, performing the critical work that led to such an extraordinary result for the class, Phillips ignored the applicable law and undisputed facts, awarding over 75% of the aggregate fees to Appellees.  The inaccuracies, inconsistencies and double-standards documented in Mills' Opening Brief lead to one inescapable conclusion—Phillips' award was the product of impermissible bias that began years before the arbitration commenced.   As Phillips' conduct violated the FAA, as well as California and Nevada law,[35] the District Court erred in failing to vacate this unjust award.   Further, having assigned all of her rights to Mills, Carolyn

---

[30] ER01040-1064; ER00983-991; ER 993-1003; ER1040-64; ER01079-81; ER00115-16; ER00118; USSER 02773-5; ER1088-90; ER01071-4; District Court Dkt. No. 646-7.

[31] ER00115-6, ER000118, ER00742.

[32] ER00120-121.

[33] See Dkt. No. 765 at p. 84.

[34] ER732:7-733:20.

[35] Phillips is a California arbitrator, and this fee arbitration was conducted in California.  Additionally, this MDL was venued in Las Vegas, Nevada.

Beasley Burton has no standing to appeal the judgment entered in the name of her former employer, the Mills Law Firm.  Her appeal should be dismissed.

## **ARGUMENT**

## II.    STANDARD OF REVIEW

While both parties acknowledge that this Court reviews a district court order confirming or vacating an arbitration award *de novo*,[36] Appellees claim that this appeal concerns only findings of fact, and asks this Court to apply a "clear error" standard.[37]    However, in *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1172 (9th Cir. 2010), Appellant sought review of an order denying a motion to vacate based on many of the same grounds present here, including "misconduct," "prejudicial misbehavior," "*ex parte* contacts," and allegations that the arbitration panel "exceeded its authority."[38]    Critically, in determining what standard of review to apply, this court noted that "[t]he issues before us involve questions of law." *Id.*  This Court should apply the same standard here, and review this order, and the legal questions presented, *de novo*.    However, *under any standard*, the District Court erred in failing to vacate this award.

---

[36] Answering Brief, p. 4.  See *United States v. Park Place Associates, Ltd.*, 563 F.3d 907, 918 (9th Cir. 2009), citing *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir.2007);

[37] Answering Brief, pp. 4-5.

[38] *Id.* at 1173-1177.

## III.  MILLS DID NOT WAIVE ITS RIGHT TO APPEAL

"Waiver always rests upon intent." *In re Hat*, 363 B.R. 123, 139 (Bankr. E.D. Cal. 2007).  "The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver [citation]." *Id.*

### A.  Mills Did Not Waive its Rights by Executing the Settlement Agreement

Appellees fail to disclose that the District Court rejected these same waiver arguments below, ruling that the parties preserved their rights both to challenge the fairness of the arbitration process and to appeal ". . . *'any' decision* by the Court regarding attorneys' fees and costs." [39]  Appellees did not appeal that decision. The Court explained that:

> [a]lthough Section 22.9 of the Settlement Agreement refers to 'binding, non-appealable arbitration,' courts have interpreted similar language to mean that the merits are not subject to court review, but that *parties do not give up their right to appeal the arbitrator's decision for any of the reasons set forth in FAA §§ 10-11, such as fraud, corruption, or partiality of the arbitrator*. *Id.* fn. 1. (emphasis added). [40]

The Court found that Sections 8.12.2 and 15.2 explicitly acknowledged the parties' right to seek review of the allocation award, both at the District Court and appellate

---

[39] Dist. Ct. Dkt. No. 736, p. 3; SER 2521 (emphasis added).
[40] *Id.*

levels.[41]  Section 15.2 provides that, "***Class Counsel retain their right to appeal any decision by the Court regarding the Attorneys' Fees and Costs*** . . ." (USSER 2521, Emphasis added). Section 8.12.2 further contemplates the right to appeal:

> ***If Class Counsel takes an appeal*** in accordance with Section 15.2, the [Qualified Settlement Fund] shall not transfer any funds for purposes of paying Attorneys' Fees and Costs ***until such appeal is fully and finally resolved such that all further rights of appeal have been exhausted***. (Emphasis added).

Reading the Settlement Agreement as a whole, as this Court directed in *Flores v. American Seafoods Co.*, 335 F.3d 904, 910 (9th Cir. 2003) (citation omitted), the District Court held that, "[u]nder the Settlement Agreement, any distribution therefore cannot occur until the Court approves an allocation plan, ***and the time for appeal either runs out or any appeal filed is completed***." *Id.* at *2 (emphasis added). The Court cited extensive authority supporting the "[presumption] that the parties intended to relinquish their right to appeal the merits of the dispute, ***not*** their right to appeal an arbitration award that resulted from the arbitrator's abuse of authority or bias.'" *Team Scandia, Inc. v. Greco*, 6 F. Supp. 2d 795, 798 (S.D. Ind. 1998) (emphasis added).  None of the cases Appellees cite suggest otherwise.

Two cases cited by Appellees, *Volt Info. Scis, Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) and *Hill v. Norfolk & W. Ry.,* 814 F.2d 1192 (7th Cir. 1987), simply reaffirmed that parties have limited grounds

---

[41] *Id.*

upon which to challenge an arbitrator's decision. *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 830 (10th Cir. 2005) is inapplicable since that court was not called on to decide whether the language "binding" and "non-appealable" precluded this type of challenge. Moreover, *MACTEC* recognized that "contractual provisions limiting the right to appeal from a district court's judgment confirming or vacating an arbitration award are permissible, so *long as the intent to do so is clear and unequivocal*." (Emphasis added.) *Id.* at 830.[42] Here, by contrast, the parties expressly *preserved* appellate review of the award in two separate sections.

In *Southco, Inc. v. Reell Precision Mfg. Corp.*, 331 Fed.Appx. 925, 927 (3rd Cir. 2009), the Third Circuit interpreted a similar agreement using the phrase "final, binding and non-appealable." Like the District Court here, the *Southco* Court distinguished *MACTEC,* holding that "'non-appealable signifies that the parties to the contract may not appeal the merits of the arbitration; not that the parties agree to waive a right to appeal the district court's judgment confirming or vacating the arbitration decision." *Id.* at 927, citing *Tabas v. Tabas*, 47 F.3d 1280, 1288 (3d Cir. 1995). This settlement is further distinguishable from *MACTEC* and

---

[42] *See also Aerojet–General Corp. v. American Arbitration Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973) ("[w]hile it has been held that parties to an arbitration can agree to eliminate all court review of the proceedings, the intention to do so must clearly appear.").

*Southco* since the parties here expressly preserved the right to appeal *any ruling* of the District Court pertaining to fees.[43]

Lastly, while Appellees now claim that the District Court retained exclusive jurisdiction, they took the opposite position in two separate proceedings in Rhode Island and Georgia, seeking to enforce the Settlement Agreement, and ***attempting to execute upon on the settlement funds***, ***forcing the District Court to issue two separate injunctions against Appellees*** in order to preserve the *status quo* pending appeal.[44] As such, any argument that the District Court's exclusive jurisdiction bars the present appeal rings hollow.

### B.    Appellees Cannot Meet Their Burden of Demonstrating an "Implied Waiver" by Clear and Convincing Evidence

One cannot waive what one does not know, and Appellees cannot meet their burden of proving, by clear and convincing evidence,[45] that Mills waived its rights to challenge this arbitration award.  In order to ". . . constitute an 'implied waiver' of substantial rights, the conduct relied upon must be clear, decisive and unequivocal of a purpose to waive the legal rights involved.  Otherwise, there is no waiver." *Groves v. Prickett*, 420 F.2d 1119, 1125-26 (9th Cir. 1970).

---

[43] Dist. Ct. Dkt. No. 736, p. 3.
[44] See District Court Dkt. Nos. 831, 855.
[45] See *In re Hat*, supra, at 139.

## 1. Mills Did Not Waive its Rights by Moving for Preliminary or Final Approval of the Settlement

The parties moved for preliminary approval on May 26, 2009.[46] However, as stated above, the parties designated Phillips as the fee arbitrator in a binding term sheet executed on December 14, 2008, all MDL class counsel unanimously reconfirmed that designation in April of 2009, and reconfirmed a third time starting on May 12, 2009, when all MDL class counsel executed the Settlement Agreement--***well before any evidence*** of Phillips' conflicts, undisclosed relationships, or misconduct came to light.[47]

Further, on November 10, 2009, just ten days prior to the continued final approval hearing regarding the aggregate attorneys' fees and costs, Appellees' counsel stated that:

> What is *not* on for hearing is . . . motions or other efforts
> to disqualify Judge Phillips as arbitrator, or any charges
> by any of class counsel accusing any other class counsel
> or anything untoward. There is a time and place for those
> disputes, but it is after the final approval goes forward.
> (emphasis in original).[48]

Appellees' counsel further stated that the issue of replacing Phillips as arbitrator ".

. . ha[s] *no* place at the upcoming [continued final approval] hearing set by Judge

---

[46] Dist Ct. Dkt. No. 302.

[47] See the fourteen facts described above. See also ER1186-1189; ER00874, 879; ER00077 ¶14; ER000215, ¶1; ER00793-4, ¶50; ER01133-1184; ER00781, ¶19; ER000897; ER0782.

[48] ER00120-121.

Pro." *Id.* (emphasis in original).    Accordingly, Appellees cannot claim that Mills

waived its rights at any time before the District Court awarded the aggregate fees.

Having contractually agreed to Phillips' service on three occasions, Mills

moved for preliminary approval on May 26, 2009 and later moved for final

approval in October of 2009.[49]  Mills believed then, and believes now, that the $85

million settlement was an exceptional result for the 3.2 million class members, and

Mills did everything in its power to support that settlement, including asking

Phillips in May 2009 to submit a declaration in support of preliminary approval,

verifying that the settlement was the product of arms-length negotiations.[50]

Mills continued supporting this settlement[51] *despite* knowing that its fee

allocation could ultimately rest in the hands of an arbitrator whose conduct and

veracity it had been forced to openly challenge.  Had Mills refused, out of a self-

interested concern about who might ultimately decide its share of attorneys' fees,

this would have been an extraordinary breach of its duties to the class.  It would

---

[49] Since Mills contractually agreed to the settlement on December 14, 2008 and
again in May 2009, any opposition could have not only endangered the entire
settlement, it likewise would have been futile since the Settlement Agreement
could not be changed without the consent of all parties.

[50] Dist Ct. Dkt. No. 305.  Appellant did not ask Phillips to submit a declaration in
support for final approval.  See ER00864-5.

[51] Contrary to Appellees' suggestion, Mills was responsible for fighting off the
objectors, winning summary affirmance in this Court.  See Ninth Cir. Case Nos.
09-17648, 09-17682, 09-17683; Dist. Ct. Dkt. No. 633.

also have been futile since co-lead Bonsignore, Wal-Mart, and the other Appellees could have moved for settlement approval independently.

Contrary to Appellees' claims, the District Court **never held that Mills waived its rights to challenge Phillips.**    Rather, during the hearing on Mills' Motion to Disqualify, the court ruled that such challenges could *only* be presented ". . . *after* the arbitrator completed the work that the parties originally agreed to him addressing . . . ,"[52] noting that the relevant authorities ". . . speak to the ***post-award*** authority of the court to address issues, if cognizable, under the provisions of the Federal Arbitration Act."[53] Likewise, during the September 2009 hearing on Mills' Emergency Motion, all parties acknowledged that the issue of Phillip's service was not yet ripe.[54]   Contrary to Appellees' claim, Mills did not ask to replace Phillips with a magistrate, but took the same position as Appellees, that ". . . the issue should be briefed ***after final approval*** to the extent an actual dispute ripens, meaning, that if one or more class counsel invoke the arbitration provisions under Section 22.9."[55]

---

[52] ER01300:10-15
[53] ER1299 (emphasis added).
[54] USSER 2811:25-2812:8.
[55] USSER 2848, fn. 3 (emphasis added).

## 2. Mills Did Not Waive its Rights by Participating in a Voluntary, Consensual Mediation

The parties engaged Phillips to preside over a *voluntary mediation* of the trust fund dispute, a consensual process that started in March, 2009,[56] well before Mills had any concerns about Phillips' conduct, and was concluded on May 28, 2009. Critically, and contrary to Appellees' suggestion, these confidential proceedings were ***always*** and repeatedly referred to by all parties as a "mediation" as opposed to an "arbitration."[57] Even Phillips referred to himself as "the mediator."[58] There was never any written agreement to arbitrate, nor could a dispute about the trust funds come within the scope of Section 22.9 since, as Appellees acknowledged,[59] Phillips' role was limited to allocating attorneys' fees *after* the aggregate fee award, and only then if the co-leads could not agree on the allocation--conditions which would not be met until 2010.

There is no dispute that the relationship between the co-leads was strained at that time. Mills believed that Bonsignore's conduct threatened the settlement. Since both trusted Phillips in early 2009,[60] they agreed to use his services as an

---

[56] ER000197-200.
[57] *Id.*; ER00082 ¶29.
[58] ER00202.
[59] Dist. Ct. Dkt. No. 765, p. 2.
[60] In fact, they had just designated Phillips as the binding fee arbitrator in December of 2008.

17

informal *mediator* in an effort to resolve their differences.[61]   These efforts successfully resolved the major disputes, but the trust fund issue remained.  In the trust fund mediation, Mills asked Phillips to "order" Bonsignore to return the disputed funds. This request, made during a voluntary, consensual, and confidential mediation, was needed to satisfy Mills' ethical responsibilities to the class, and even used language proposed by Bonsignore.[62]

Mr. Mills indeed expressed during that mediation that he had "moved heaven and earth" to keep Phillips in the case, and was accordingly taken aback when Phillips revealed that he had had *ex parte* exchanges with Appellees regarding a *Salvas* hearing and, believing the disparaging representations made by Appellees, Phillips demanded the transcripts.[63]  Mr. Mills implored Phillips not to "prejudge" the situation before learning the full truth about what had happened in that case,[64] including "read[ing] all the emails" since ". . . other counsel in this case have come to [Phillips] and have put spin on what happened in other proceedings."[65]  Contrary to Appellees' claims, the inappropriate emails complained of in this appeal came *after* the May 28, 2009 mediation, following

---

[61] ER000197-200.

[62] Mr. Bonsignore submitted a "proposed order" as well. See ER142.

[63] See ER00215-216; ER0787-8.

[64] SER1899; ER216 ¶5.

[65] ER1013-4.

18

Mills' recusal request.[66]  Accordingly, Mills never waived any challenge to those inappropriate communications by asking Phillips to read any *earlier* emails.

Though this mediation brought Mills the relief it wanted—Bonsignore's return of the disputed funds—this and other troubling exchanges with Phillips, and the profound bias and disturbing conflicts that began to emerge, were the last straw for Mills, which formally asked Phillips to recuse himself ***just eight days later***.[67] This recusal request marked a sea change in the parties' relationship with Phillips and each other.

### 3. Mills Did Not Waive Its Rights by Participating in the Fee Arbitration

In a last ditch effort to avoid addressing the merits, Appellees contend that Mills waived its rights by participating in the fee arbitration, (presumably as opposed to boycotting the proceedings and receiving no fee allocation whatsoever).[68]  This argument not only ignores that fact that the District Court previously denied Mills' motion to disqualify Phillips, thus forcing Mills to submit to these proceedings, but also conflicts with Appellees' previous position that a challenge to Phillips ". . . under the FAA could not succeed and could only be

---

[66] See e.g. ER1046-1064.

[67] ER1016-01033.

[68] Contrary to Appellees' contention, Phillips did not adopt Burton's "protocols" but simply her proposed briefing schedule, which Phillips finalized after Appellees did not object. See SER 1573.

properly be brought as a motion for vacatur."[69]  Ironically, while claiming waiver, Appellees' *own briefing* details the exhaustive efforts undertaken by Mills to object to Phillips' service well before his jurisdiction ripened.[70] Appellees' newly-minted claim that Mills should have (or could have) done more to voice its objections is contradicted by the overwhelming record, their own briefing, and common sense.

## IV.   THE DISTRICT COURT ERRED BY NOT VACATING PHILLIPS' ARBITRATION AWARD PURSUANT TO 9 U.S.C. § 10(a)

An arbitration award must be vacated where it is procured by "corruption, fraud or undue means," there is "evident partiality or corruption," where the "arbitrator is guilty of misconduct," when an arbitrator "exceeded their power," or enters an award in "manifest disregard of the law." 9 U.S.C. § 10(a), *Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277, 1290 (9th Cir. 2009).

### A. Vacatur Was Required by Phillips' "Evident Partiality"

The FAA, like the corresponding California requirements, was designed to safeguard the due process rights of parties in arbitration, imposing a fundamental safeguard: "the simple requirement that arbitrators disclose to the parties *any* dealing that might create an impression of possible bias." *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 149 (1968).  Because of the largely unchecked authority parties consign to their arbitrators, Justice White

---

[69] Bonsignore's Opposition to Motion to Vacate, Dkt. No. 765 at p. 84, lines 10-12.
[70] See Answering Brief, pp. 19, 20, 44.

cautioned that arbitrators should err on the side of disclosing all potentially troublesome business relationships:

> In many cases the arbitrator might believe the business relationship to be so insubstantial that to make a point of revealing it would suggest he is indeed easily swayed, and perhaps a partisan of that party.   But if the law requires the disclosure, no such imputation can arise.

*Id.* at 151.   Should arbitrators fail to adhere to this standard, the FAA provides litigants with a potent remedy, vacatur of the arbitration award.   *Commonwealth Coatings* has been interpreted as ". . . 'somewhat analogous to a *per se* rule' or ***irrebuttable presumption*** requiring the award to be set aside once it is established that the Arbitrator actually knew of yet failed to disclose potentially prejudicial facts which could impair his judgment."   *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1201 (11th Cir. 1982) (Emphasis added) (Cited with approval in *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004)).

Mills can show "evident partiality" under 9 U.S.C. § 10(a)(2) by two independent ways: (1) the failure to disclose information creating a reasonable impression of bias, or (2) evidence of actual bias.   *Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 427 (9th Cir.1996); see also *Commonwealth Coatings, supra,*

393 U.S. at 150; *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 635, 645-46 (9th Cir. 2010).[71]

### 1. Phillips Failed to Disclose or Seek Authorization Before Accepting Multiple Roles in the *Salvas* Case at the Request of the Appellees and Wal-Mart

Here, the record shows that *after* Phillips' designation as fee arbitrator *in this case*, he accepted multiple, undisclosed roles in *Salvas v. Wal-Mart Stores Inc.* ("*Salvas*"), where Mills and several Appellees were counsel of record.[72] These included: (1) mediator on May 16, 2009; (2) the new business embedded in the *Salvas* term sheet, which created a financial incentive for Phillips to seek approval of that settlement; and (3) advocate in support of the proposed settlement. It is undisputed that Appellants Mills and LaPlant never consented to these roles and, instead, objected strenuously.

#### a) Phillips' Undisclosed Mediation Role in *Salvas*

On May 13, 2009, Mills first learned that Appellees and Wal-Mart retained Phillips to conduct a new mediation on May 16, 2009 without Mills' knowledge,

---

[71] Phillips was also required by California Code of Civil Procedure Section 1281.85 to adhere to the California Ethics Standards, which cannot be waived, are not preempted by the FAA, and should have warranted vacatur as well. *Ovitz v. Schulman*, 133 Cal. App. 4th 830, 848, 35 Cal. Rptr. 3d 117, 130 (2005); *Jevne v. Superior Court*, 35 Cal. 4th 935, 944, 111 P.3d 954, 960 (2005) (concluding that the California Standards ". . . ***are not preempted by the FAA*** . . .") (emphasis added).

[72] ER00878-9.

and without the consent of the class representatives, its co-counsel, or LaPlant.[73] At that time, Mills' employee, Ms. Burton, had been acting as *de facto* lead counsel in that case.[74] Phillips scheduled this mediation at the request of Appellees Bonsignore and Furth, two inactive counsel who had no settlement authority.[75]

The record contains no confirming letters, e-mails, or disclosure forms sent by Phillips' office – no evidence whatsoever that Phillips satisfied his disclosure obligations under the FAA or California law.[76] Even assuming *arguendo* that Phillips "made all of the necessary disclosures" when he was first designated the MDL fee arbitrator in December of 2008, as Appellees erroneously contend,[77] Phillips had an *ongoing duty* to disclose and seek the parties' consent before accepting subsequent relationships with the other parties to the fee arbitration.[78] Appellees do not even argue that Appellant LaPlant received any of these alleged disclosures, and the District Court ignored the nondisclosure to LaPlant altogether.

Mills immediately and repeatedly objected to this planned mediation to Appellees, and to Phillips himself, complaining about the conflicts and other

---

[73] ER000872; ER000780, ¶17; ER000874; ER00878-9.

[74] Burton was later formally appointed lead counsel when the *Salvas* Court rejected the settlement. ER106.

[75] Phillips was aware of these relationships based on prior mediations. See ER00774-775; ER00874, ER00878-9.

[76] Indeed, Appellees' citations on page 15 of their Answering Brief *do not refer to any evidence at all.*

[77] Answering Brief, p. 15.

[78] See e.g. Standard 7(f) of the California Ethics Standard for Neutral Arbitrators in Contractual Arbitration.

improprieties presented, and reminding Phillips that Bonsignore and Furth had no settlement authority, and in fact had been fired by both class representatives.[79]

On May 15, 2009, despite receiving Mills' objections, and knowing that Bonsignore and Furth had no settlement authority, Phillips refused to cancel the mediation, stating, "it is what it is," and declaring his intention to proceed with the mediation with "whoever shows up."[80]

On May 21, 2009, Phillips acknowledged that he was ". . . *uncomfortable about becoming involved again* [in a *Salvas* mediation] given [his] ongoing role in the MDL and [Mills'] *objection about conflicts* which [he] received the night before the mediation." (Emphasis added).[81] Surely, once Phillips grew "uncomfortable" about the conflicts inherent in serving in two incompatible roles in two cases involving the same opposing parties, he was *required* to cease any involvement, offer full disclosure, and seek all parties' consent.[82]

However, it was not until many months (and years) later that Mills gradually learned what transpired in Phillips' office on May 16, 2009, though many questions remain. Contrary to Appellees' representation that ". . . the case was

---

[79] ER00872-882.

[80] ER00876. In that same correspondence, Phillips acknowledged having *ex parte* contacts with Wal-Mart's counsel, Brian Duffy.

[81] ER00887.

[82] An arbitrator ". . . not only must be unbiased but also must avoid even the appearance of bias." *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 149 (1968).

settled by the time the parties arrived at Phillips' office,"[83] and the District Court's similarly erroneous finding regarding the same,[84] at least ***seven different attorneys***, including representatives from two of the Appellees' firms, negotiated the settlement terms in the conference rooms in Phillips' office,[85] billing time all day to participation in "a mediation."[86]

It was not until 2011 that Mills learned from Wal-Mart's counsel that these attorneys ***actually drafted*** the *Salvas* term sheet and ironed out the details of the settlement in the conference rooms in Phillips' offices.[87]  Phillips also had lunch with at least some of the participants, and engaged in *ex parte* contact with Appellees.[88]  Appellees (and Wal-Mart) conceded to the *Salvas* court that Phillips was the "actual mediator" of the *Salvas* settlement,[89] inviting the *Salvas* court to contact Phillips on his cell phone to speak *ex parte* about the proposed settlement.[90]

---

[83] Answering Brief p. 18.

[84] ER00008:23-25.

[85] ER000276:21-277:6.

[86] ER00781; 000897.  Appellees' sworn billing entries further state, e.g. "Travel to/from Orange County for Salvas Mediation with Judge Phillips. Prepare for and attend Salvas mediation."

[87] ER00276:21-277:6.

[88] ER00782, ¶20. Wal-Mart also disclosed that Phillips charges $19,000 per day, and anticipated getting a bill.  ER00090.

[89] For example, asking the *Salvas* Court to contact Phillips regarding the fairness of the settlement, Bonsignore referred to Phillips as the "actual mediator."  ("Lane Phillips, as you recall, invited you to call him.  So ***the actual mediator invited you to call him at the time.***" ER000103 (emphasis added.)  See also ER0939:22-940:4.

[90] ER00716, ¶17.  Judge Murtaugh rejected these inappropriate invitations. ER00939:5-9.

Ignoring the undisputed record, the District Court erroneously concluded that the May 2009 *Salvas* mediation was not a "new" business relationship since the parties mediated with Phillips in the past.[91] However, there can be no dispute that Phillips' authorized role in *Salvas* ended after the mediation of that case proved unsuccessful on December 14, 2008.[92] Mills, the only counsel who represented the class representatives or had any settlement authority, did not engage Phillips for any additional sessions, which cost $19,000 per day, or for any subsequent, *informal* settlement talks,[93] choosing instead to negotiate with Wal-Mart's counsel directly.[94]

Unlike the District Court here, the *Salvas* judge—who had presided over the case for several years and knew the role of each of the attorneys involved, found that the mediation and Phillips-backed settlement were unauthorized, rejecting it as "tainted,"[95] and concluding that "there is nothing worse" than being undermined by a member of the same team while Mills was actively negotiating settlement with

---

[91] ER00007.

[92] ER0878-9. Appellees' unsupported claim that "Phillips served as the mediator in *Salvas* intermittently from 2006-2009" on page 17 is incorrect. We note, though, that since there were no other mediations in 2009, Appellees tacitly admit that Phillips served in the capacity of mediator on May 16, 2009, despite their continued denial that he mediated that settlement.

[93] ER0777, ¶11.

[94] ER00715, ¶6, ER00717, ¶20.

[95] ER00098.

Wal-Mart.[96] Judge Murtaugh called this tactic "classical attorney shopping,"[97] lambasting Appellees Furth and Bonsignore for scheduling the mediation without the Mills firm, who it deemed critical to any negotiations,[98] and criticized Phillips for scheduling a mediation under those circumstances.[99]

> b) Phillips' Undisclosed Roles in the Term Sheet Created a Financial Incentive for Phillips to Seek Approval of that Settlement

Mills later learned that the *Salvas* term sheet executed in Phillips' office provided additional business opportunities for Phillips in three separate capacities.[100] Thus, ***Phillips had a substantial financial stake in the approval of the Salvas settlement***, which Mills was actively opposing in order to protect the rights of the class.[101] The District Court clearly erred in concluding that Phillips was somehow designated as the *Salvas* mediator *in perpetuity* and empowered to convene $19,000 per day mediations over the objections of the lead counsel and class representatives. However, even assuming that Phillips had some sort of

---

[96] ER0096:22-97:6.

[97] ER0097:9-12.

[98] See ER00089:4-15. Judge Murtaugh found that Appellant was "key" and the settlement, which could not be approved because ". . . critical counsel have not agreed to it." ER0099, ER00096:6-15.

[99] ER000940:17-20.

[100] ER00906-910. See Sections Q and B.2.

[101] Phillips earned at least $140,000 from the MDL fee arbitration, (see ER00054), and presumably could have earned as much in *Salvas* if the settlement had been approved.

*implied* authority to conduct subsequent mediations by virtue of his prior service, the District Court clearly erred in dismissing the business relationships embedded in the term sheet, which were unquestionably *new*.

For example, Phillips never served as an *arbitrator* in the *Salvas* case, yet the *Salvas* term sheet included an arbitration role.[102]  Phillips never served as an *advocate or expert witness* with regard to attorneys' fees in the *Salvas* case, yet the *Salvas* term sheet designated Phillips the advocate or expert as well.[103]  Phillips never served as a mediator over the terms of any settlement documents in the *Salvas* case, yet the *Salvas* term sheet included that role for Phillips too.[104]  There can be no dispute that each of these roles was a *new business opportunity* for Phillips -- different from any role he previously played in *Salvas* -- and none of them were properly disclosed to Mills or LaPlant.[105]

c)  Phillips' Unauthorized and Undisclosed Advocacy Role in Support of the Proposed *Salvas* Settlement

At the time of the proposed *Salvas* settlement, Phillips had already been designated as the parties' fee arbitrator in the MDL.[106]  Mills and its employees,

---

[102] ER00909.

[103] ER00907.

[104] ER00909.  Wal-Mart's counsel acknowledged that Phillips charges $19,000 a day for his mediation services. ER00090.

[105] ER0878-9; ER01292, ¶16-17.

[106] Section 22.8 also provided that Phillips would arbitrate disputes between Wal-Mart and Class Counsel.  Though Phillips' jurisdiction was never invoked for this

who had led this case, and had invested millions of dollars in fees and out-of-pocket expenses, had much to lose by challenging the authority (and questioning the conduct) of their designated MDL fee arbitrator.[107]  Yet, Mills' duties to the *Salvas* class required it to object to the collusive settlement.

Appellees and Wal-Mart capitalized on this vulnerability by repeatedly asking the *Salvas* court to contact Phillips to speak *ex parte* about the proposed settlement, and asking the Court to *require* that Mills attend a new mediation with Phillips.[108]  Phillips himself pressured Mills to drop its opposition, first by ***inviting*** Mills to mediate the *Salvas* settlement with him,[109] and then, after Mills declined, ***ordering*** Mills to appear at his office on the same day.[110]  Phillips thereafter refused Mills' request that he disavow Appellees' representations that he was the "the actual mediator"[111] of the proposed settlement or that he was willing to speak to the *Salvas* Court about the "***relative conduct*** of the parties" during prior, confidential mediation sessions.[112]  Instead, Phillips intensified the pressure by

---

purpose, this designation should have prohibited Phillips from engaging in *ex parte* communications with Wal-Mart, yet the record shows that he did.  See e.g. ER00876.

[107] ER00036.

[108] ER00928-930.

[109] ER01005-9.

[110] *Id.*

[111] ER000103.

[112] ER00925-926 (emphasis added).

*confirming* his willingness to speak *ex parte* with the *Salvas* judge about the proposed settlement, or **any Wal-Mart settlement**,[113] despite Mills' objections.

The District Court clearly erred in dismissing the prejudicial nature of Phillips' conduct, concluding that Phillips never explicitly agreed to take any particular position on the proposed settlement.[114] First, the proposed *Salvas* term sheet, negotiated and executed in Phillips' office, provided that Phillips "will support" class counsel's fee petition.[115] Second, there would be no reason for Appellees and Wal-Mart to aggressively and repeatedly offer Phillips as a witness, providing the *Salvas* court with Phillips' cell phone number,[116] if he had not agreed to *support* the settlement. Even if Phillips had not agreed to take any particular position, his refusal to honor Mills' requests that he disassociate himself from Appellees' and Wal-Mart's proffer, and refrain from communicating his views to the court, made it clear that he supported the settlement and that Mills should drop its objections or else risk its fee in the MDL.

*No matter what position* Phillips took, his willingness to share his views about the settlement with the court created an untenable and disqualifying conflict. If he testified that the settlement was fair, adequate and reasonable, that would

---

[113] ER00889.

[114] ER00009.

[115] ER00907. One of Mills' primary challenges to that proposed settlement was that class counsel would receive up to 70% of the fund. See ER 00785-6; ER00951-981; ER00969-970.

[116] ER00912-913; ER716, ¶17.

have conflicted with Mills' position that the settlement was grossly inadequate.  If he somehow agreed with Mills' assessment, this would have conflicted with Appellees, who supported that settlement.

Phillips' unauthorized advocacy role violated the central tenet of *Commonwealth Coatings, supra*, 393 U.S. at 150, that an arbitrator "not only must be unbiased but also must avoid even the appearance of bias."  While dropping its objections would have ingratiated Mills to its eventual fee arbitrator, it would have been an extraordinary disservice to the *Salvas* class.  Phillips' support of the proposed *Salvas* settlement, and his refusal to cease his involvement in that case, not only demonstrated Phillips' bias, it also represents arbitral misconduct requiring vacatur.

At tremendous risk to its fees in the MDL, Mills successfully challenged the proposed *Salvas* settlement, no doubt a personal and professional embarrassment to Phillips, who had presided over sixty-three prior Wal-Mart settlements.[117]  It also deprived him of the business woven into the *Salvas* settlement.  Mills later secured a new settlement providing over 4.4 times greater net recovery to the class.[118]

---

[117] Answering Brief, p. 16, fn. 13.

[118] See ER00111-2; ER00786; ER00951-981; ER00969-970.  Judge Murtaugh noted that, "In resisting the old rejected settlement and accepting the risk of having to do better and absorbing the sharp public criticism from members of the class action bar involved in other Wal-Mart class litigation, the [Appellant] performed a service for the class which is deserving of special recognition." ER00112.

Phillips' inappropriate and antagonistic involvement in the *Salvas* case ultimately tainted his award, where Phillips devoted a section, entitled "Ethical Issues," to Mills' challenges to the *Salvas* settlement and Appellee' unfounded and irrelevant accusations of wrongdoing.  Accordingly, Appellees cannot claim that Phillips' misconduct or non-disclosures were harmless.  Since this misconduct, and undisclosed, material relationships created a "reasonable impression of bias," the District Court also erred in denying vacatur under 9 U.S.C. § 10(a)(2).

### 2.   Phillips Failed to Disclose that Appellee Bonsignore Retained Him in Two S*mokeless Tobacco* Cases

It was not until *after* final approval that Mills discovered that Appellee Bonsignore had retained Phillips in his *Smokeless Tobacco* litigation.[119]  There is no record that Phillips (or anyone else) properly disclosed these relationships.  In fact, *none of the citations in Appellees' brief* point to any admissible evidence of disclosure, let alone by Phillips, who had the legal obligation to do so.  ***Appellees do not even argue that Appellant LaPlant received any disclosure***.  Appellees also failed to dispute that Bonsignore's claim to have verbally informed Robert Mills about the *Smokeless Tobacco* case a year before they even met.[120]

---

[119] ER00077 ¶14; ER000215, ¶1; ER00793-4, ¶50; ER01133-1184.
[120] ER00215, ¶1.

While the District Court found the disclosure in dispute,[121] and there is no contention that Phillips himself made any disclosure, the Court insisted that the Mills was required to show "what specific facts about [Phillips'] participation in those cases shows an improper motive."[122] However, the District Court erred since ***there is no such requirement*** in non-disclosures cases. "In nondisclosure cases [under the FAA], a showing of actual bias is not required." *Fidelity Federal Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1312 (9th Cir. 2004), citing *Schmitz v. Zilveti*, 20 F.3d 1043, 1048 (9th Cir. 1994). "Showing a 'reasonable impression of partiality' is sufficient in a nondisclosure case because the policy of section 10(a)(2) instructs that the parties should choose their arbitrators intelligently." *Schmitz, supra*, at 1047, citing *Commonwealth Coatings*, *supra*, at 151.

Mills was not required to prove an "improper motive," nor could Mills, who was not present for the *Smokeless Tobacco* sessions with Phillips and Bonsignore, articulate what relationships and communications occurred, much less explain how those interactions influenced or motivated Phillips. Since this material relationship was not disclosed, and created a "reasonable impression of bias," the District Court erred in denying vacatur under 9 U.S.C. § 10(a)(2).

---

[121] Appellees state that the District Court found that this involvement was not disclosed. See Answering Brief, p.48.

[122] ER008.

### 3. Phillips Failed to Disclose How He Earned Two $5,000 Checks from Appellee Bonsignore

*After final approval*, Mills discovered even more evidence of impropriety and undisclosed business relations—two unexplained checks from Appellee Bonsignore to Phillips in 2009.[123] These consisted of one from Bonsignore's firm, and another, inexplicably, in the form of a ***cashier's check*** made out to Layn Phillips *personally*,[124] even though Phillips required that payment for his services be directed to his firm.[125]   These checks are dated March 27, 2009 and September 1, 2009, during a time of high tension between the parties (and Phillips), but well after the case settled on ***December 14, 2008***.  Phillips never sent an invoice for any subsequent services in the MDL, nor did Bonsignore ever seek reimbursement for any such bills he paid.[126] If these checks were for truly legitimate expenses, one has to wonder why Bonsignore never sought reimbursement or why neither Bonsignore nor Phillips ever provided any evidence to explain what these payments actually concerned.

Despite the glaring impropriety, the District Court clearly erred in denying vacatur, claiming that Mills failed to object to whatever relationship these checks

---

[123] ER00709-0712; ER794 ¶51; ER00077 ¶14; ER000216-7, ¶8.
[124] ER00710.
[125] See ER00054.
[126] ER000216-7, ¶8.  The sole exception was in the fee award itself. ER00052-3.

34

represented.[127]   However, Mills did not even learn about the checks until **November of 2009**,[128] nearly a year *after* Phillips' designation, and sixteen days *after* final approval.[129]   The District Court also erred in finding that Mills received these checks in *September* of 2009 when the emails the Court cited were from *November*.[130] Moreover, the District Court's holding was illogical since the subject of those payments has never been revealed, and is inconsistent with the District Court's ruling on the Motion to Disqualify that Mills *could not object* to Phillips' service until *after* the arbitration was completed, the same position repeatedly advocated by Appellees.

Since these two checks, and whatever dealings they evidence, have never been explained by anyone, let alone by Phillips, the District Court clearly erred in not vacating the award pursuant to 9 U.S.C. § 10(a)(2).

### B.    Vacatur Was Required by Phillips' "Actual Bias," "Misconduct" and "Undue Means"

A party may also demonstrate "evident partiality" by proof of an arbitrator's "actual bias."   In fact, an arbitrator ". . . must avoid even the appearance of

---

[127] ER00008.

[128] ER00709-0712.

[129] ER00709-0712.  Final Approval was granted on November 2, 2009.  See Dist Ct. Dkt. No. 491.

[130] ER00008:8-10.

bias."[131] *Commonwealth Coatings, supra*, 393 U.S. at 150. Further, an arbitration award may be vacated "where the arbitrators were guilty . . . of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. §10(a)(3). Further, an award may be vacated based on "undue means," which ". . . connotes behavior that is immoral if not illegal." *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992).

Here, the record shows that: (1) Phillips refused to cancel the *Salvas* mediation, despite Mills' repeated objections; (2) Phillips was not candid about his role in the *Salvas* mediation and proposed settlement, thereby aiding the Appellees; (3) Phillips engaged in multiple *ex parte* and inappropriate communications with Appellees, which they admit were designed to influence him; (4) Phillips assisted Appellees by obtaining and responding to two sealed motions Appellant filed in the District Court; (5) Phillips conducted *ultra vires* arbitrations over Appellant's objections and without any arbitral jurisdiction; and (6) Phillips made disparaging comments in the press about Mills and its then-pending motion for vacatur.

---

[131] See also The Code of Ethics for Arbitrators in Commercial Disputes, Canon I (A); The California Ethics Standards for Neutral Arbitrators, Standard 1(b). Similarly, Nevada state law requires an arbitrator to be neutral: N.R.S. § 38.227.

## 1. Phillips Refused to Cancel the *Salvas* Mediation Scheduled by Appellees and Wal-Mart

With respect to Phillips' refusal to cancel the *Salvas* mediation, Appellees and the District Court both respond that this was not a "new" business relationship and that Mills ". . . was aware of" the mediation (even though it received notice just three days prior).[132]  For all of the reasons set forth above, these contentions conflict with the record.[133] More importantly, they are largely irrelevant to the "actual bias" and "misconduct" analyses.

Phillips knew that Appellee Furth had been inactive in the *Salvas* case for years, that Furth and Bonsignore had been terminated by the class representatives, and that neither represented any class members.[134]  As an experienced neutral, Phillips was also aware of the dangers of a collusive, reverse-auction settlement. Phillips was reminded of these dangers,[135] but chose to disregard the interests of Mills and the class, prompting the *Salvas* court to conclude that the settlement was "tainted" with the hallmarks of "classical attorney shopping."[136]  The *Salvas* court

---

[132] Answering Brief, p. 48.

[133] In fact, Judge Murtaugh observed just how inappropriate it was to schedule a mediation without Appellant. "[H]ow in the world did you think it was appropriate for you, or anyone else, to go to a mediation without an agreement with counsel, Ms. Burton and Mills' firm to actually go attend at a given point in time." ER0089.

[134] ER00774-775; ER00878-9.

[135] ER00878-9.

[136] ER0097.

observed, "[p]eople are saying don't you dare do it, because you have no authority and if I were [Phillips] I would not be leading any mediation at that point."[137]

Phillips' refusal to appropriately respond to Mills' objections, and disengage in *Salvas*, evidences arbitral "misconduct" and "undue means."   It also illustrates his "actual bias" because it stands in stark contrast to Phillips' response to objections raised by Bonsignore.  When Bonsignore questioned whether Phillips had a "special relationship" with Ms. Burton in March of 2009,[138] Phillips immediately suspended his involvement in the MDL, and refused to submit a declaration in support of  the settlement ". . . until the jurisdiction and neutrality predicates [were] resolved."[139]

However, some two months later, when Mills repeatedly objected to the conflicts raised by Phillips' simultaneous involvements in *Salvas* and the MDL, ***Phillips refused to stand down***, insisting that he had the right to mediate the case with "whoever shows up,"[140] and was free to speak to any judge about any Wal-Mart settlement, notwithstanding Mills' objections.[141] These two starkly differing positions demonstrate the extent of Phillips' actual bias against Mills and in favor

---

[137] ER00940. Judge Murtaugh noted that Mills was a "key" player, and the settlement would not be approved because ". . . critical counsel have not agreed to it." ER00099.  See also ER01285-1286, ER000936.
[138] SER 1825.
[139] *Id.*; ER00860; ER00778; Answering Brief, pp. 15-16.
[140] ER00876.
[141] ER00889.

of Appellees—bias that would eventually taint his award. Accordingly, the District Court erred in failing to vacate on this basis.

### 2. Phillips Made Misleading Claims About the May 16, 2009 *Salvas* Mediation, Supporting Appellees' Effort to Win that Settlement's Approval

Though conceding this is a "grave" allegation, the District Court dismissed Mills' claims about the actual bias demonstrated by Phillips' misleading communications, erroneously concluding that the sole basis for Mills' claim was ". . . hearsay in Burton's affidavit that she heard from another attorney that Phillips was more involved than previously disclosed, including having lunch with the parties who arrived at his office."[142] This was clearly erroneous for several reasons. First, as a statement from a party, Ben Furth's admissions were not hearsay pursuant to F.R.E. 801(d)(2)(A). More importantly, Phillips' communications were directly contradicted by the judicial admissions and uncontroverted evidence below from Appellees and Wal-Mart.

At 11:46 a.m. on the morning of May 16th, Phillips wrote, "[t]he parties arrived and announced they reached a resolution without the need for my participation."[143] Phillips failed to mention that he had segregated those parties into separate conference rooms, and that were still in his office and would remain there

---

[142] ER009:5-7.
[143] ER00882.

for the rest of the day working out the settlement.[144]  Similarly, on May 21, 2009,

Philips wrote:

> . . . the parties arrived at my office Saturday morning and told me they had settled the case.  I said that I was pleased they had because ***I felt uncomfortable about becoming involved again given my ongoing role in the MDL and your objection about conflicts*** which I received the night before the mediation. ***I returned to my office and had no other involvement.  Period.  End of Story***. (Emphasis supplied).[145]

The record shows that what really happened in Phillips' office on May 16, 2009

had all of the hallmarks of a mediation—seven attorneys, representing two adverse

parties, convening in separate conference rooms, at a neutral location, spending all

day negotiating and then executing a binding settlement term sheet, with a $19,000

per day mediator available to assist as needed, having lunch with the parties, and

engaging in *ex parte* conversations.[146]

While Appellees continue the semantic charade of insisting that Phillips did

not preside over "a mediation," they offer no explanation for why Phillips sent out

such deceptive communications.   Notably, Phillips sent his second communication

on May 21, 2009, the day before the *Salvas* court had scheduled an emergency

hearing, at Mills' request, to address the unauthorized mediation.  After Appellees

claimed that Phillips was willing to speak to the Court, Mills requested that

---

[144] ER00781-782, ¶20; ER00897; ER00276:25-277:7.
[145] ER00887 .
[146] ER000276-277; ER00781; ER00897; ER00782, ¶20.

Phillips refrain from injecting himself into these proceedings. Phillips' refused,[147] and his misleading letter left Mills with conflicting and inaccurate information about his role on the eve of the May 22, 2009 hearing.

### 3. Phillips Repeatedly Received Inappropriate and *Ex Parte* Communications from Appellees

In addition to showing "actual bias," Phillips' receipt of inappropriate and *ex parte* communications from Appellees about Mills violated 9 U.S.C. § 10(a)(1), which mandates vacatur based on conduct that is ". . . immoral if not illegal." *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403-1404 (9th Cir. 1992). *Ex parte* communications constitute "misconduct" where they prevent a party from receiving a fair arbitration. See, e.g., *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.* 935 F.2d 1019, 1025 (9th Cir. 1991); *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1176 (9th Cir. 2010).

Mills' request that Phillips recuse himself, and its challenges to the Phillips-backed *Salvas* settlement, unleashed a torrent of inflammatory, inappropriate and *ex parte* communications between Phillips and Appellees.[148] The District Court clearly erred in dismissing the cumulative, prejudicial impact on the ultimate fee award. Rather, the Court held that "*[m]ost* of the communications the [Mills]

---

[147] ER0888-889.
[148] See, e.g. ER1040-1064; ER00993; 1079-1081

identified as ex parte were not *ex parte*,"[149] and similarly found that ". . . **nearly all** the identified communications were not *ex parte*. . ."[150] Indeed, Phillips was in fact privy to numerous *ex parte* and other (perhaps more damaging) inappropriate communications that tainted the fee arbitration proceedings and were reflected in his award.

The District Court erroneously ignored the still-undisclosed communications between Phillips and Bonsignore following the June 5, 2009 recusal request.[151] Simply put, Phillips should not have engaged in *ex parte* contacts with Bonsignore and should have informed Mills of, and copied it on, any communications regarding such a sensitive matter.

With respect to the earlier *ex parte* communications revealed during the May 28, 2009 trust fund mediation, which had so inflamed Phillips that he demanded a copy of the transcript of the *Salvas* hearing in question,[152] the District Court concluded that Phillips could have received this information "in the context of a mediation, at which ex parte communications would be expected."[153]  However, this is clearly incorrect because any *ex parte* communications between Appellees

---

[149] ER00005 (emphasis added).

[150] ER000013 (emphasis added).

[151] ER001035, 1038 (e-mails confirming that Bonsignore had obtained a copy of the letter at least as early as noon on June 8, 2009, but the letter was not served by Bass' office until 6:45 p.m.).

[152] ER1012:11-1014:25; ER00215-216; ER00787-788.

[153] ER00005.

and Phillips about the *Salvas* hearing (held on May 22, 2009) necessarily occurred between May 22, 2009 and May 28, 2009, during which time ***no mediation took place***. Further, Appellees now characterize the proceedings on May 28th as an arbitration,[154] not a mediation, in which case *ex parte* contacts would not be appropriate. Lastly, Mills is still unaware of the full nature and extent of the *ex parte* communications between Phillips and the Appellees during the May 16, 2009 mediation.

Far more improper than the *ex parte* communications, however, were the countless inappropriate emails and letters copied to Phillips following Mills' request that Phillips recuse himself, *during a time in which there was nothing pending before Phillips*, and long before his arbitral jurisdiction even ripened. Appellees relentlessly attacked Mills, while heaping praise on Phillips, and "surveying" each other about their support for Phillips and intent to remove Mills' employee as Co-Lead Counsel in this case because of their challenge to Phillips and objection to the *Salvas* settlement.[155] This included a "survey" with the subject line: "Wal-Mart vote to remove carolyn [sic] if conflict," and included a demand that (Mills' employee) Burton withdraw as Co-Lead Counsel in the MDL if a

---

[154] Answering Brief, p. 18.

[155] *Id.*

43

"conflict" existed between her and Phillips,[156] an admission that Appellees perceived the conflict in Phillips' dual roles.

Here, the District Court clearly erred in concluding that Mills "failed to object to Phillips about the e-mail communications."[157] ***Mills in fact formally objected to Phillips***, through its attorney, that these communications appeared ". . . to be simply an effort to prejudice [Phillips],"[158] and further objected that these emails would make it impossible to know what information Phillips relied upon in rendering his award.[159] Phillips refused to do anything, thus encouraging Appellees to continue bombarding him with inappropriate emails throughout 2009.[160]

Mills' concerns proved prescient, as this ambiguous and incomplete record makes it impossible to determine the extent to which each inappropriate communication played a role in his award. Indeed, Appellee Robin Brewer[161] openly *admitted* that the purpose of sending these e-mails was to sway Phillips.[162]

---

[156] See e.g. ER1046.

[157] ER00013, line 9. Appellees similarly contend that Appellant ". . . could have readily objected to such communications. . ." but ". . . did not do so." (Answering Brief, p. 60).

[158] See, e.g. ER00145, fn. 5.

[159] ER01066.

[160] *Id.* See also ER00982-992; ER001079-1081; ER00983-1004; 1040-64.

[161] Ms. Brewer is a partner of lead Appellee, Bonsignore & Brewer.

[162] ER01069.

Appellee Ravenholt likewise *admitted* that it was inappropriate to copy Phillips on these "surveys," citing his concern about Phillips' "neutrality."[163]

The District Court clearly erred in disregarding the impact and significance of these extraordinarily inappropriate communications on the grounds that they were not *ex parte* and therefore permissible. [164]  Phillips' failure to curtail this barrage of inflammatory attacks on Mills, which occurred over a year before his arbitral jurisdiction under Section 22.9 ripened, over Mills' strenuous objections, when there was nothing pending before him, demonstrated Phillips' bias and arbitral misconduct.   Compounding this problem, it appeared that Phillips was actively working in concert with Appellees.[165]

Most importantly, these inappropriate communications resulted in actual prejudice to the Mills since *Phillips relied on this information*.  Phillips in fact recited the results of these "polls" in response to Mills' request that he recuse himself.[166]  Incredibly, Phillips later included a section in his fee arbitration award devoted to "Ethical Issues" concerning *the Salvas disputes*,[167] demonstrating how Phillips' biases and embroilment in *Salvas* ". . . influenced the outcome of the

---

[163] ER001067.

[164] ER00005.

[165] *See, e.g*., ER01057;  ER01051; ER001061; ER001046.

[166] ER1071-3.

[167] ER00051. Appellees devoted the bulk of their fee arbitration briefing to attacks on Appellant's challenge to the Phillips-backed settlement in *Salvas,* evidencing the extent to which they believed that Phillips was biased by the *Salvas* debacle, and forcing Appellant to defend its conduct in an unrelated case.

arbitration." *M & A Elec. Power Co-op. v. Local Union No. 702, Int'l Broth. of Elec. Workers, AFL-CIO*, 977 F.2d 1235, 1238 (8th Cir. 1992).  Accordingly, the District Court erred in refusing to vacate the award on this basis.

### 4. Phillips Inappropriately Obtained and Responded to Mills' Sealed Motions in the District Court, Exhibiting "Misconduct" and "Actual Bias"

On September 5, 2009, Phillips submitted his own response to Mills' Emergency Motion, *filed under seal,* in which Mills requested the District Court's guidance concerning the impasse between Mills and Appellees, (Dkt No. 334),[168] following Appellees' "vote" "to remove Burton *ab initio* as Co-Lead Counsel" and their refusal to provide her with their expert reports and billing.[169]  Unquestionably, Section 22.9 did not authorize Phillips to weigh in on the Emergency Motion, nor was there any other authorization for his involvement in this dispute.   Yet Phillips chose to respond to the Court, stating, "I now know why Ms. Burton refused to provide me with the pleadings," calling her "less than candid," and her statements "misleading,"[170] putting his spin of the facts all in ***direct conflict*** with Mills and demonstrating his actual bias.[171]   As the parties' fee arbitrator, Phillips had no

---

[168] ER01088-1090.
[169] ER000993, 1079-81.  Philips was copied on this e-mail, wherein Bonsignore told Phillips that he will "otherwise follow up," suggesting again that the two were working in concert. See also ER01057; ER01051; ER001061; ER001046.
[170] ER1088-9.
[171] Dkt No. 334.

justification for inserting himself into this sensitive, unrelated proceeding before the District Court, especially by taking a position critical of Mills (or any party) and the District Court erred in concluding that this did not amount to "misconduct" or "improper advocacy."[172]

Phillips later demanded a copy of Mills' motion for disqualification, which was filed under seal so that Mills could candidly document Phillips' misconduct without influencing the fee arbitration.   When Mills declined his request, Phillips nonetheless sought and obtained a copy from Bonsignore and submitted his own response to the Court yet again.[173]   The District Court clearly erred in ruling that Phillips had a *business interest* in reviewing Mills' *sealed* disqualification motion,[174] noting that "[u]nlike a judge, an arbitrator ***must attract business*** . . ."[175] The District Court did not explain why Phillips' alleged "business interest" in a sealed, confidential and *non-public* filing should trump Mills' right to an unbiased arbitration proceeding.

Phillips' receipt of the disqualification motion was profoundly prejudicial misconduct, and "materially relate[d] to an issue in the arbitration."   *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir. 1982).   The fact that Phillips' chose to respond to the District Court ***at all*** demonstrates the true impact and

---

[172] ER0006:16.

[173] ER01191-2; USSER 2773-5.

[174] ER00010-11.

[175] *Id.* emphasis added.

prejudice of Phillips' receipt of this motion.[176]  Thereafter, Phillips also made disparaging comments about Mills' motions to the press, including the motion for vacatur, all while it was still pending before the District Court.[177]  His disparaging comments, in filings in the District Court and publicly in the press, evidenced his "actual bias and "misconduct," and the District Court erred in failing to grant vacatur on this basis.

### C.  Phillips "Exceeded His Powers" by Presiding Over Multiple *Ultra Vires* Arbitrations, Demonstrating "Actual Bias" and "Misconduct"

"Arbitrators exceed their powers for purposes of § 10(a)(4) when they 'act outside the scope of the parties' contractual agreement,'" *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 643 (9th Cir. 2010), citing *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 830 (9th Cir.1995); *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1134 (9th Cir. 2003).

Intensifying the conflict between the parties after Mills successfully challenged the proposed *Salvas* settlement, Phillips allowed Appellee Bonsignore to retain him, unilaterally, to conduct unauthorized, one-sided "arbitrations" of Bonsignore's purported complaints about Mills.  These unauthorized arbitrations involved matters far outside the scope of Phillips' narrowly defined jurisdiction

---

[176] USSER 2773-5.
[177] ER01196-1197; ER00151-152.  Mills declined to offer a quote or litigate this matter in the press. ER00152.

under Section 22.9 of the fully-integrated Settlement Agreement, and occurred well over a year before Phillips' arbitral jurisdiction even ripened. Phillips compounded this misconduct by authorizing Bonsignore to share his scathing "orders" with the District Court in an attempt to influence those proceedings, putting him in direct conflict with Mills.[178]

The unilateral arbitrations that Phillips conducted at Bonsignore's behest were inconsistent with Appellees' own admissions concerning Phillips' arbitral jurisdiction:

> The task of the arbitrator was ***narrow and clearly defined by Paragraph 22.9*** of the Settlement Agreement, which charged Judge Phillips with ***allocating the gross attorneys' fee*** awarded by this Court ***in the event that*** Co-Lead Counsel, Robert Bonsignore and Carolyn Burton were unable to reach agreement.[179]

Appellees thus concede that Phillips' jurisdiction was "narrow," and "clearly defined," limited to "allocating the gross attorneys' fee," and could only ripen "in the event that" the two co-leads "were unable to reach an agreement."

Phillips' first such "arbitration" was on September 5, 2009, well over a month before the settlement was even approved, wherein Phillips chose to respond to Mills' sealed Emergency Motion to voice his opinion to the District Court

---

[178] ER1099-1102.
[179] Dkt. No. 765, p. 2.

regarding the impasse between the co-leads.[180] Just a few days later, on September 9, 2009, Phillips agreed to Bonsignore's request to "arbitrate" accusations against Mills over expert reports and invoices,[181] despite the fact that Phillips again had no basis for jurisdiction, nor could an issue of this nature be "arbitrated" in any event.

After refusing to grant Mills' request for a two day continuance to respond to Appellees' baseless claims, Phillips issued a decision, again without any involvement by Mills, wrongly concluding that Mills *intentionally* failed to cooperate with Bonsignore, and lamenting his inability to *sanction* Ms. Burton.[182] Phillips authorized Bonsignore to share his October 2, 2009 "order" with the District Court--just 17 days before the October 19, 2009 final approval hearing.[183]

Disregarding the facial lack of jurisdiction, and resulting prejudice, the District Court erred in simply accepting the arbitrator's tortured rationale, ruling that "Phillips explained the basis for his assertion of arbitral jurisdiction."[184] However, Phillips' strained justification directly conflicts with Section 22.9, which Appellees admit was the sole, "narrow" and "clearly defined" basis for his jurisdiction, which could only be invoked *after* the District Court made an

---

[180] ER01088-1090.
[181] ER01092; ER1099-1102; ER00791-793.
[182] ER01094; ER1099-1102.
[183] ER1102; Dist. Ct. Dkt. No. 482.
[184] ER00010.

aggregate fee award.[185]   The District Court did not award aggregate fees until November 2009 and the award did not become a final judgment until 2010.  Thus, Phillips' arbitral jurisdiction could not ripen, if at all, until 2010.

Incredibly, however, Phillips claimed that Section 22.9 empowered him, *even before the gross fee had been awarded in November of 2009*, to intervene into a dispute between the co-leads concerning their exercise of discretion and authority, ". . . order[ing] [Mills] to provide [Appellee Bonsignore] billings by each expert retained by [Mills], evidence of payments of each expert, and communications with each such expert."[186] Aside from the question of whether such responsibilities of co-lead class counsel *could ever* be delegated to an arbitrator, there is no question here that Phillips was never granted such authority under Section 22.9 or anywhere else.

Further, the District Court erred in concluding that Mills ". . . did not move to vacate or otherwise challenge the exercise of [Phillips'] jurisdiction."[187]   Mills strenuously challenged Phillips' jurisdiction, and refused to participate absent an order compelling arbitration.[188] Appellees **did not move to compel arbitration**, nor did they move to confirm the resulting "orders."  Further, any effort to object to the

---

[185] Dkt. No. 765, p. 2.  "Determinations of arbitrability, like the interpretation of any contractual provision, are subject to *de novo* review." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).
[186] See SER1568.
[187] ER00010.
[188] See ER01084, fn.3.

substance of Phillips' awards in the District Court, assuming Mills could even do so,[189] would have contradicted the District Court's "Catch-22" ruling that Mills could not object to Phillips' service until *after* the fee arbitration.[190]

Lastly, with respect to both the *ultra vires* proceedings, and the *ex parte* and intemperate communications, the District Court found that Mills' evidence

> . . . supports, at best, ***an inference of prejudice***. However, the [Appellant] has not presented evidence sufficient to meet its burden of showing the results of the arbitration award would have been different if Phillips had not made the purportedly ultra vires rulings or received the email communications.[191] (Emphasis added).

However, the FAA does not require a party to meet the District Court's heightened, "but for" standard. Phillips was obligated to ". . . avoid even the appearance of bias." *Commonwealth Coatings, supra*, 393 U.S. at 150. Given the extensive record of impropriety in this case, it would be impossible to point to any one act or piece of evidence as the single, "but for" cause of the biased, disproportionate fee award. Rather, multiple undisputed acts evidencing bias and misconduct, as well as the cumulative impact of Phillip's conduct, should have mandated vacatur.

---

[189] It is also unclear whether these "orders" could even be enforced in a motion to confirm or challenged in a motion to vacate.

[190] ER732:7-733:20.

[191] ER00013.

## V.    PHILLIPS' BIAS AND ANIMOSITY CULMINATED IN A FEE AWARD THAT WAS "IRRATIONAL" AND EVIDENCED A "MANIFEST DISREGARD OF LAW"

As Appellees concede, an award that cannot be reconciled with the undisputed facts must be vacated for manifest disregard of the law. (Answering Brief, pp. 70-71, citing *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1133 (9th Cir. 2003)) (". . . a federal court will not confirm an arbitration award that is legally irreconcilable with the undisputed facts.").

Phillips' grossly disproportional arbitration award, as detailed at length in Mills' Opening Brief, is inconsistent with the law and facts established in the record, and represented the final manifestation of his actual bias against Mills and LaPlant.[192]   The bias and partiality demonstrated in that award mandated vacatur. Nonetheless, ***Appellees do not cite a single piece of evidence*** to contradict any one of the seven glaring inconsistencies and double-standards addressed in Mills' Opening Brief,[193] and which included Phillips awarding Appellees over 75% the aggregate fees.[194] For example, of the "surplus funds" allocated to the two co-lead firms, Phillips awarded ***over 80% ($5,181,157.24) to Bonsignore & Brewer, and less than 20% ($1,000,000) to Mills***.[195]

---

[192] See Opening Brief, pp. 58-66.
[193] *Id.*
[194] ER00021-57.
[195] ER00049.

Instead of rebutting this evidence, Appellees merely note the dearth of law in this area, suggesting that an arbitrator's award should be merely "rubber stamped" by the District Court, and by this Court, regardless of how egregious the facts. This Court, however, has rejected the notion that a District Court's should merely ". . . in essence, rubber stamp the arbitrator's decision. . ." *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 407 (9th Cir. 2011). "Congress could not have meant to authorize district courts to confirm corrupt awards, especially where one of the parties had properly objected to the award's illegality." *Id.* at 412. The District Court erred by simply deferring to the arbitrator in the face of overwhelming evidence that this award could not be reconciled with applicable law and facts established in the record. Instead, the award should have been vacated pursuant to Section 10(a)(2)-(4).

## VI.    THE APPEAL OF CAROLYN BEASLEY BURTON SHOULD BE DISMISSED

As addressed in Mills' Opening Brief, and remains unrebutted, since Carolyn Beasley Burton assigned any interest in the attorneys' fees to Mills, she has no standing to maintain an independent appeal of the award entered in the name of the Mills Law Firm.[196]    Moreover, any interest Ms. Burton may have in the fees awarded to Mills is protected by her Employment Contract, providing her

---

[196] Mills incorporates by reference Opening Brief, pp. 67-75; Dkt. Nos. 38, 40, 43.

recourse through arbitration.[197]  As Ms. Burton's personal entitlement to attorneys' fees, if any, has not been adjudicated in arbitration or in the District Court, this Court need not consider her premature claims at this stage.

## VII.  CONCLUSION AND SUMMARY OF RELIEF REQUESTED

For the reasons set forth above, and in Appellant's Opening Brief, the District Court clearly erred in denying vacatur based on the cumulative impact of the non-disclosures, actual bias and misconduct that ultimately tainted this arbitration award.  The order denying the motion to vacate should accordingly be reversed.  Further, as she has no standing to step into the shoes of her former employer and prosecute this appeal, Ms. Burton's appeal should be dismissed.


Dated: February 13, 2013              Respectfully Submitted,
                                      s/ Robert W. Mills
                                      Robert W. Mills
                                      The Mills Law Firm

---

[197] Dkt. No. 43.

## CERTIFICATE OF COMPLIANCE

1. Appellant has sought relief from the type-volume limitation of Fed. R. App. P 32(a)(7) because this brief contains 11,974 words as calculated under Fed. R. App. P. 32(a)(7)(i), excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(6) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief was prepared in proportionally-spaced 14 point typeface using Microsoft Word 2010.

Dated: February 13, 2013                 Respectfully Submitted,
                                         s/ Robert W. Mills
                                         Robert W. Mills
                                         The Mills Law Firm

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on February 13, 2013, I served a true and correct copy of APPELLANT THE MILLS LAW FIRM'S REPLY BRIEF by "Notice of Electronic Filing" that is automatically generated by the court's Electronic Filing System and constitutes service of the filed document on ECF participants of record, listed below.

Cynthia Kegley Smith ; Mark Clayton Choate; Paul Chilton EchoHawk ; Jill Telfer; Frederick Paul Furth; Wayne D. Parsons; Layn Raymond Phillips; Robert J. Bonsignore; Carolyn Beasley Burton; Royce Deryl Edwards; Carol Powell LaPlant David Michael Noonan; Troy Nino Giatras;  Lanny Darr; Christopher Paul Welsh; Fred Schultz; Frankin D. Azar;   George Courtney French; Thomas H. Johnson; Gary Sean Nitsche; Mark A. Tate; Laurent Remillard Jr. Senior; John Jay Rausch; Gregory Francis Greiner;  Vincent Glorioso III; Samuel Rudman;  Donald Goldbloom; Adriana Contartese; Daniel D. Ambrose; Daniel Rausher; J. Thomas Henretta; Jeffrey Padwa; Pamela R. Mullis; Matthew T. Tobin; Robert Christopher Gilreath; Stephen Mark Smith; Jay A. Urban; Bradley D. Bonner; Michael Christian; and Dirk A. Ravenholt.

I, the undersigned, certify that on February 13, 2013, I served a true and correct copy of APPELLANT THE MILLS LAW FIRM'S REPLY BRIEF by U.S. Mail on Mike J. Miller, Solberg Stewart Miller & Tjon LTD, 1129 Fifth Avenue

South, Fargo, ND 58107 and R. Deryl Edwards Sr., 606 South Peral Avenue, Joplin, Missouri 64801.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Rafael, California on February 13, 2013.

s/ Robert W. Mills
Robert W. Mills

The Mills Law Firm
